**No. 23-2123**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

_____

BREANNA RENTERIA, LAURA SMITH, AND TAMMY WATERS
*Plaintiffs-Appellants*

v.

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE, and
ALICE T. KANE,
New Mexico Superintendent of Insurance,
in her official capacity
*Defendants-Appellees*

_____

Appeal from the United States District Court for the District of New Mexico,
No. 1:23-cv-00276 MLG/KK (Hon. Matthew Garcia)

_____

**BRIEF OF THE ALLIANCE OF HEALTH CARE SHARING MINISTRIES
AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS AND
REVERSAL**

_____

Michael Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
Tel: (202) 551-1730
Fax: (202) 551-0230
Email: michaelmurray@paulhastings.com
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

CORPORATE DISCLOSURE STATEMENT .........................................1

IDENTITY AND INTEREST OF AMICUS CURIAE............................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................2

BACKGROUND ....................................................................................5

I.      Health Care Sharing Ministries Are a Common, Flourishing, and Sincere Exercise of Religious Belief. .............................................................5

II.     This Case, the Government's Defense, and the District Court's Decision. ....7

ARGUMENT ........................................................................................10

I.      The New Mexico Insurance Code Is Not a Law of General Applicability...10

      A.    The New Mexico Insurance Code Exempts Secular Conduct That Concerns the Same Government Interest It Asserts for Health Care Sharing Ministries. ...............................................................11

      B.    The District Court's Disregard of the New Mexico Insurance Code's Exemptions Is Wrong and Rests on Impermissible Factors. ..............14

II.     New Mexico May Not Question the Soundness of Plaintiffs-Appellants' Religious Beliefs, as Opposed to Their Sincerity..........................................18

      A.    The First Amendment Forbids Questioning the Soundness of Plaintiffs' Religious Beliefs, as Opposed to Their Sincerity. .............19

      B.    New Mexico Appeared to Be Critiquing the Soundness of Plaintiffs-Appellants' Religious Beliefs...........................................22

CONCLUSION......................................................................................26

CERTIFICATE OF COMPLIANCE....................................................27

CERTIFICATE OF DIGITAL SUBMISSION .....................................28

CERTIFICATE OF SERVICE ..............................................................29

i

# TABLE OF AUTHORITIES

**Cases**

*Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682 (2014) ................. 19, 21, 22, 24

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) . 10, 11, 13, 16

*Colorado Christian Univ. v. Weaver*, 534 F.3d 1245 (10th Cir. 2008) ...................17

*Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) ...............................................................13

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*,
    494 U.S. 872 (1990) ........................................................ 4, 10, 18, 19, 20

*Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246 (2020) ...........................17

*Fulton v. City of Phila*., 141 S. Ct. 1868 (2021) ..................................... 9, 10, 11, 16

*Hernandez v. Comm'r,* 490 U.S. 680 (1989) ..................................................... 17, 20

*Jones v. Wolf*, 443 U.S. 595 (1979) .......................................................................20

*Kennedy v. Bremerton Sch. Dist*., 142 S. Ct. 2407 (2022) ........................ 10, 11, 18

*Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719 (2018)...20

*Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian
    Church*, 393 U.S. 440 (1969) ...................................................................20

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) .................14

*Tandon v. Newsom*, 593 U.S. 61 (2021) ................................. 3, 4, 12, 14, 15, 16, 18

*Thomas v. Review Bd. of Indiana Employment Security Div*.,
    450 U.S. 707 (1981) .............................................................. 21, 24, 25

*United States v. Ballard*, 322 U.S. 78 (1944) ........................................................20

*Watson v. Jones*, 80 U.S. 679 (1871)......................................................................25

**Statutes**

26 U.S.C. § 5000A(d)(2)(B) .........................................................................................6

26 U.S.C. § 5000A(d)(2)(B)(ii)(II) ..........................................................2, 6

New Mexico Religious Freedom Restoration Act,
   NMSA 1978, § 28-22-5 (2000) ..............................................................3, 18

NMSA 1978, § 59A-1-15 .................................................................................3, 13

NMSA 1978, § 59A-1-16 .................................................................................3, 13

**Rules**

Fed. R. App. P. 29(a)(4)(E) ...............................................................................2

**Other Authorities**

Alliance of Health Care Sharing Ministries, Data and Statistics (June 8, 2023),
   https://ahcsm.org/about-us/data-and-statistics/ ..................................5, 6

Alliance of Health Care Sharing Ministries, Frequently Asked Questions (June 8,
   2023), https://ahcsm.org/faq/ ........................................................ 5, 6, 18

**Constitutional Provisions**

N.M. Const., art. XXI, § 1 .................................................................................3, 18

U.S. Const., 1st Am...........................................................................................2, 18

## CORPORATE DISCLOSURE STATEMENT

The Alliance of Health Care Sharing Ministries neither has a corporate parent nor issues stock, so no publicly held company owns 10% or more of any of its stock.

## IDENTITY AND INTEREST OF AMICUS CURIAE

The Alliance of Health Care Sharing Ministries is a Section 501(c)(6) trade organization dedicated to protecting the liberty of its member health care sharing ministries ("HCSMs") and their individual members to exercise their religious beliefs in health care. To that end, the Alliance routinely engages with federal and state governments on behalf of its members in order to provide accurate and timely information on health care sharing ministries and the religious liberty protections that the law affords to such ministries and their members.

This case raises issues at the core of those Alliance activities and the Alliance's overall mission. Specifically, this case involves arguments that religious organizations such as health care sharing ministries may be subject to laws that are riddled with exceptions for similar secular conduct without triggering strict scrutiny under the First Amendment. It also involves arguments that health care sharing ministries do not involve the sincere exercise of religious belief. The Alliance's experience and expertise can help guide the Court's analysis of those religious liberty issues. Indeed, the district court granted the Alliance's motion for leave to

1

file an amicus brief and cited that brief approvingly in one of its opinions in this case.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Health care sharing ministries are a common, flourishing, and sincere exercise of religious belief. That is why Congress recognized health care sharing ministries in the Affordable Care Act and the U.S. Department of Health and Human Services has certified that one hundred and seven health care sharing ministries, including the organization relevant to plaintiffs-appellants here, satisfy the requirement that they "share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs." *See* 26 U.S.C. § 5000A(d)(2)(B)(ii)(II). *Amicus curiae* the Alliance of Health Care Sharing Ministries helps support these ministries and members, including plaintiffs-appellants, in the exercise of their religious beliefs.

Because plaintiffs-appellants are exercising their religious beliefs, plaintiffs-appellants clearly are eligible for the religious liberty protections provided by federal and state constitutions and laws, which generally restrict the government from "prohibiting the free exercise" of religion. *See, e.g.*, U.S. Const., 1st Am.; N.M.

---

[1] No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person other than amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E).

Const., art. XXI, § 1; New Mexico Religious Freedom Restoration Act, NMSA 1978, § 28-22-5 (2000). That protection includes enjoying the benefit of the well-established principle that laws that burden religious exercise and are not "generally applicable" are subject to strict scrutiny. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022).

Laws are not generally applicable "whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (emphasis in original). Here, New Mexico's attempt to enforce the insurance code against health care sharing ministries does not constitute the application of a "generally applicable" law. That is because New Mexico's insurance code is riddled with exceptions for activity that is similar to health care sharing with respect to the government's interest. For example, New Mexico's insurance code exempts actual insurance activities performed by fraternal benefit societies and labor organizations. *See* NMSA 1978, §§ 59A-1-15; 59A-1-16.

The district court ruled otherwise by focusing on irrelevant factors, such as whether one exemption for fraternal benefit societies is full or partial and would apply to religious fraternal benefit societies, and whether fraternal benefit societies may have different motivations for their conduct than health care sharing ministries. *See* Appendix 1011-12 (Memorandum Opinion and Order Granting in Part and Denying in Part Motion to Reconsider, Dkt. No. 54, at 10-11 (Oct. 12, 2023). Its

analysis is directly contrary to the Supreme Court's recent decisions on general applicability, which require a generally applicable law to provide at least as much of an exemption to religious organizations as accorded to secular organizations and do not distinguish among conduct based on "why" organizations partake in it. *Tandon*, 593 U.S. at 62.

New Mexico, for its part, went even further than the district court and resisted any application of religious liberty protections to health care sharing ministries, but on an unlawful ground. New Mexico argued that plaintiffs-appellants' religious beliefs are not supported by "citations to Scriptural or other texts" and differ from those of "[m]any other Christians." *See* Appendix 0550 (Defendants' Reply to Plaintiffs' Response to Motion to Dismiss, Dkt. No. 18, at 10 (May 23, 2023)). But the Supreme Court clearly has stated that "[r]epeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim." *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990). Although the district court did not embrace New Mexico's arguments, it said that it may revisit that conclusion and New Mexico may press those arguments again in this Court. Appendix 0891-92 (Memorandum Opinion and Order Granting in Part Motion to Dismiss and Denying Motion for Preliminary Injunction, Dkt. No. 38, at 6-7 (July

14, 2023).  Consequently, *amicus curiae* file this brief to address the flaws in New Mexico's arguments as well as the flaws in the district court's decision.

## BACKGROUND

### I.   Health Care Sharing Ministries Are a Common, Flourishing, and Sincere Exercise of Religious Belief.

"Health Care Sharing Ministries allow faith-centered people to come together as a community to share each other's medical expenses."  *See* Alliance of Health Care Sharing Ministries, Frequently Asked Questions (June 8, 2023), https://ahcsm.org/faq/.  They also "share more than health expenses," for "they offer spiritual support with prayer over the phone, encouraging notes, and community prayer requests for members."  *Id.*  Each ministry performs these acts in different ways, but in general they "welcome any like-minded individuals" and have a "statement of beliefs that everyone in the community agrees to uphold."  *Id.* That statement "ensures that the community, and the ministry it operates, maintains its identity rooted in shared faith and values."  *Id.*

Health care sharing ministries are common and flourishing.  There are over one hundred health care sharing ministries in the United States, nine of which have large, open membership.  *See* Alliance of Health Care Sharing Ministries, Data and Statistics (June 8, 2023), https://ahcsm.org/about-us/data-and-statistics/.  Over one and a half million Americans are members of health care sharing ministries.  *See* Alliance of Health Care Sharing Ministries, Frequently Asked Questions (June 8,

2023), https://ahcsm.org/faq/.  Members are located in every state.  *See* Alliance of Health Care Sharing Ministries, Data and Statistics (June 8, 2023), https://ahcsm.org/about-us/data-and-statistics/.   Together, these members and ministries have shared billions of dollars in medical expenses, sharing $1.3 billion in expenses in 2021 alone.  *Id*.

Health care sharing ministries also are recognized by numerous governmental bodies as sincere exercises of religious belief.  Congress recognized health care sharing ministries in the Affordable Care Act.  That Act exempts those individuals enrolled in a health care sharing ministry from the mandate requiring minimum essential coverage.  26 U.S.C. § 5000A(d)(2)(B).  The Act defines a health care sharing ministry as, in relevant part, an organization "members of which share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs."  *Id*. § 5000A(d)(2)(B)(ii)(II).

The U.S. Department of Health and Human Services, consistent with this congressional recognition, has recognized one hundred and seven health care sharing ministries as satisfying these criteria.  *See* Alliance of Health Care Sharing Ministries, Data and Statistics (June 8, 2023), https://ahcsm.org/about-us/data-and-statistics/; *see* Appendix 0355 (Exh. 7 to Plaintiffs' Motion for Preliminary Injunction, Dkt. No. 3-7 (Mar. 31, 2023)) (explaining that health care sharing ministry satisfies federal standards).

6

Plaintiffs-appellants here, as they explained at length for the court in the hearing on plaintiffs-appellants' motion for a preliminary injunction, *e.g.*, Appendix 0636-38 (Preliminary Injunction Hearing Tr. at 83-85 (June 2, 2023)), are a part of this common, flourishing, and sincere exercise of religious belief through health care sharing ministries.

## II.    This Case, the Government's Defense, and the District Court's Decision.

Plaintiffs-appellants in this case challenged the application of the New Mexico insurance code to their health care sharing ministry.  Plaintiffs-appellants argued, among other things, that the state's attempted application of the New Mexico insurance code burdened their sincere religious exercise pursuant to a policy that is not neutral and generally applicable.  They moved for a preliminary injunction.

The government responded to that argument in moving to dismiss and opposing the motion for a preliminary injunction by, among other things, questioning the soundness of plaintiffs-appellants' religious beliefs.  In its briefing on its motion to dismiss, New Mexico argued that plaintiffs-appellants' religious beliefs are not based on "citations to Scriptural or other texts."  Appendix 0550 (Defendants' Reply to Plaintiffs' Response to Motion to Dismiss, Dkt. No. 18, at 10 (May 23, 2023)).  As New Mexico put it, plaintiffs-appellants "have not produced any citations to Scriptural or other texts that would specifically require Individual Plaintiffs to be members of a healthcare sharing ministry."  *Id.*  New

7

Mexico further argued that plaintiffs-appellants "base their case on vague Biblical verses that, essentially, require them to be charitable" and emphasized that "[m]any other Christians, not to mention atheists and members of non-Christian faiths, manage to live by such a commandment without participating" in a health care sharing ministry. *Id.*; *see* Appendix 0482 (Motion to Dismiss, Dkt. No. 8, at 14 (Apr. 25, 2023)) (plaintiffs-appellants do not have standing because they do not allege that they were "specifically required by their religious or other beliefs to be members of healthcare sharing ministries").

New Mexico pressed this point through questioning at the preliminary injunction hearing as well. After plaintiffs-appellants elicited pages of testimony regarding their religious beliefs, New Mexico did not question their sincerity but instead interrogated plaintiffs-appellants as to whether there is "anywhere in the scripture that says something about, along the lines that, thou shall be a member of a healthcare sharing ministry." Appendix 0686 (Preliminary Injunction Hearing Tr. at 133 (June 2, 2023)).

Fortunately, the district court did not embrace the government's argument in its initial ruling in this case. Instead, crediting amicus curiae's brief in the district court, the court concluded that plaintiffs-appellants sufficiently allege that "sharing healthcare costs through an HCSM is a means through which they practice their faith." Appendix 0891-92 (Memorandum Opinion and Order Granting in Part

Motion to Dismiss and Denying Motion for Preliminary Injunction, Dkt. No. 38, at
6-7 (July 14, 2023)).  The court left open the possibility, however, that it would
revisit this determination, which it viewed through the lens of standing after the
motion-to-dismiss stage.  *Id.*  The district court went on to grant the government's
motion to dismiss in part and deny the preliminary injunction because of pending
state court proceedings against one of the plaintiffs-appellants, which gave rise to
rulings on *Younger* abstention and lack of irreparable harm, respectively.  It did not
assess the merits of plaintiffs-appellants' religious liberty claims.

After the state court proceedings resulted in an adverse ruling against the
plaintiff health care sharing ministry, the district court addressed the merits of
plaintiffs-appellants' religious liberty claims.  Plaintiffs-appellants argued that their
religious liberty claims should be assessed under strict scrutiny because, among
other reasons, the New Mexico insurance code is not generally applicable in light of
its numerous exemptions, including for fraternal benefit societies.  *See Fulton v. City
of Phila.*, 141 S. Ct. 1868, 1876-77 (2021) (law that is not generally applicable is
subject to strict scrutiny).  The court concluded that strict scrutiny was not applicable
to these claims because the insurance code is generally applicable, enumerating
several factors.  *See* Appendix 1002 (Memorandum Opinion and Order Granting in
Part and Denying in Part Motion to Reconsider, Dkt. No. 54 (Oct. 12, 2023)).  First,
it reasoned that although the code exempts fraternal benefit societies, it does so only

for "certain provisions" and not others and that fraternal benefit societies can be religious or secular.   Appendix 1011 (Order at 10).   Second, it reasoned that insurance is "ancillary" to the purpose of fraternal benefit societies, such that fraternal benefit societies are "different entities with distinct purposes."   Appendix 1011-12 (Order at 10-11).

**ARGUMENT**

## I.    The New Mexico Insurance Code Is Not a Law of General Applicability.

An individual or organization may prove that a violation of the free exercise of religion has occurred by showing "that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'"   *Kennedy v. Bremerton Sch. Dist*., 142 S. Ct. 2407, 2422 (2022).   Laws that burden religious exercise are subject to strict scrutiny if they are not neutral or generally applicable.   *See id*.; *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 878-882 (1990); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531–532 (1993).

A government policy can fail the general applicability requirement in at least two different ways.   First, "[a] law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'"   *Fulton*, 141 S. Ct. at 1877 (quoting *Smith*, 494 U.S. at 884); *see Kennedy*, 142 S. Ct. at 2422 (same).   Second, "[a]

government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" *Kennedy*, 142 S. Ct. at 2422 (quoting *Fulton*, 141 S. Ct. at 1876–1877).

New Mexico's code fails at least this second test. Although the government asserts the code prohibits health care sharing ministries, the code also is riddled with exceptions that "permit[] secular conduct that undermines the government's asserted interests in a similar way." *See id.* Instead of recognizing this fatal flaw, the district court focused on irrelevant factors, such as whether one exemption for fraternal benefit societies is full or partial and would apply to religious fraternal benefit societies, and whether fraternal benefit societies may have different motivations for their conduct than health care sharing ministries. Appendix 1011-12 (Memorandum Opinion and Order Granting in Part and Denying in Part Motion to Reconsider, Dkt. No. 54, at 10-11 (Oct. 12, 2023)).

### A.  The New Mexico Insurance Code Exempts Secular Conduct That Concerns the Same Government Interest It Asserts for Health Care Sharing Ministries.

"A law . . . lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877. That makes the law fatally "underinclusive." *Hialeah*, 508 U.S. at 543. Underinclusivity is a significant

concern because it indicates that religious observers are receiving "unequal treatment." *Id.* at 542.

This is a strict test. As the Supreme Court recently explained, government policies trigger strict scrutiny "whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (emphasis in original).

"[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* That is, "[c]omparability is concerned with the risks various activities pose, not the reasons why" people engage in them. *Id.* In *Tandon*, for example, the Supreme Court struck down a COVID restriction in California because it distinguished between at-home religious exercise, where households could not gather, and hair salons and similar commercial enterprises, where they could. *Id.* at 63-64.

Here, New Mexico's insurance code exempts numerous types of secular conduct that are comparable to health care sharing ministries with respect to the government's interest. Indeed, the insurance code exempts at least ten types of activities: fraternal benefit societies, nonprofit health care plans, health maintenance organizations, prepaid dental plans, motor clubs, bail bondsmen, insurance premium finance companies, title insurers and title insurance agents, certain labor

12

organizations, credit union share insurance, and risk management divisions. *See* NMSA 1978, §§ 59A-1-15; 59A-1-16. Several of these types of organizations, most prominently fraternal benefit societies and labor organizations, engage in health care financing solutions, just like health care sharing ministries.

The New Mexico insurance code, in short, is riddled with exceptions. Although there may be some dispute among courts as to whether one minor exemption for secular activity always renders a government policy not generally applicable, there can be no dispute that a policy that contains more than one exception for comparable secular conduct is not generally applicable. *See Dr. A. v. Hochul*, 142 S. Ct. 2569, 2570 (2022) (Thomas, J., joined by Alito and Gorsuch, JJ., dissenting from denial of certiorari) (collecting cases on whether one exemption suffices). Indeed, such a rule would be directly contrary to *Hialeah*, which held a ban on animal sacrifice not generally applicable. *Hialeah* is distinguishable from *Smith*, where the criminal ban on peyote was upheld notwithstanding one exemption (for certain medicinal prescriptions), on the ground that the local ban on animal sacrifice in *Hialeah* exempted multiple similar activities from its ban, including killing for food, to eradicate pests, and to eliminate "excess" animals. *Hialeah*, 508 U.S. at 544-46.

**B.** **The District Court's Disregard of the New Mexico Insurance Code's Exemptions Is Wrong and Rests on Impermissible Factors.**

Instead of focusing on the numerous exceptions to the New Mexico insurance code (at least one of which it did not dispute), the district court focused on two factors that are not only irrelevant to the issue of general applicability but also impermissible for courts to consider.

The court first observed that "although it is true that certain provisions of the Insurance Code do not apply to fraternal benefit societies, many still do" and some fraternal benefit societies can be religious.  Appendix 1011 (Memorandum Opinion and Order Granting in Part and Denying in Part Motion to Reconsider, Dkt. No. 54, at 10 (Oct. 12, 2023)).  This reasoning is directly contrary to Supreme Court precedent that holds that once a government creates a favored class of organizations, it must justify excluding religious organizations.  "It is no answer that a State treats some comparable secular businesses or other activities as poorly." *Tandon*, 593 U.S. at 62.  Rather, as Justice Kavanaugh put it in *Roman Catholic Diocese of Brooklyn v. Cuomo*, which struck down some of New York's COVID restrictions on religious organizations, "once a State creates a favored class of businesses, as New York has done in this case, the State must justify why houses of worship are excluded from that favored class."  141 S. Ct. 63, 73 (2020) (Kavanaugh, J., concurring).

Next, the court posited that insurance provided by fraternal benefit societies is "ancillary" to the organization's purpose, while health care sharing ministries exist

14

to share medical costs.   Appendix 1011-12 (Memorandum Opinion and Order Granting in Part and Denying in Part Motion to Reconsider, Dkt. No. 54, at 10-11 (Oct. 12, 2023).   Plaintiffs-appellants properly point out that the district court's conclusion is based on erroneous views of both fraternal benefit societies, which are increasingly focused on insurance, and health care sharing ministries, which are often religious communities who provide spiritual as well as monetary support for medical needs.  Opening Br. at 32-33.

More fundamentally, however, the district court's conclusion is exactly the type of analysis that the Supreme Court rejected in *Tandon*.  In *Tandon*, the Supreme Court concluded that California's ban on at-home worship gatherings was not a generally applicable law because it exempted similar secular gatherings in commercial establishments.  593 U.S. at 61.  The Court explicitly held that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation." *Id.* at 62.  "Comparability," the Court explained in the context of regulations justified by COVID risks for large gatherings, "is concerned with the risks various activities pose, not the reasons why people gather." *Id.*

The same is true here:  comparability must be judged by the "risks" that the organizations—fraternal benefit societies and health care sharing ministries—pose, not the "reasons why" they operate how they do.  Yet there is nothing in the record

that indicates that the supposed "ancillarity" of insurance to fraternal benefit societies and the supposed lack of similar "ancillarity" for health care sharing ministries changes in any way the government's asserted interest.

Perhaps realizing that its reasoning contradicted *Tandon*, the district court attempted to distinguish *Tandon* on a different ground, namely, that *Tandon* involved "specific prohibitions on religious conduct." Appendix 1012 (Memorandum Opinion and Order Granting in Part and Denying in Part Motion to Reconsider, Dkt. No. 54, at 11 n.7 (Oct. 12, 2023)). But whether religious activity is specifically named by the government goes to whether the government policy is neutral, not whether it is generally applicable. As *Fulton* explained, "[g]overnment fails to act *neutrally* when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." 141 S. Ct. at 1877 (emphasis added). By contrast, a government policy fails the generally applicable test when it results in unequal treatment, regardless of its wording. *Id.* Indeed, the policies in *Hialeah* exhibited "facial neutrality" and still were held not to be "generally applicable." *Hialeah*, 508 U.S. at 534.

In addition, and certainly without such evidence of a difference in government interest, an inquiry into whether an activity is central or "ancillary" to a religious organization's mission is antithetical to the Constitution's protections for religious liberty. The Supreme Court has warned that "[i]t is not within the judicial ken to

question the centrality of particular beliefs or practices to a faith." *Hernandez v. Comm'r of Internal Revenue,* 490 U.S. 680, 699 (1989). Nor may courts pick and choose among religions: as this Court put it, "[f]rom the beginning, this nation's conception of religious liberty included, at a minimum, the equal treatment of all religious faiths without discrimination or preference." *Colorado Christian Univ. v. Weaver*, 534 F.3d 1245, 1257 (10th Cir. 2008). Yet distinguishing among religious groups—health care sharing ministries, fraternal benefit societies, or others—whose health care sharing or similar activities are "ancillary" to their group mission from those for whom it is central does precisely that. The district court's reasoning, if taken to its logical conclusion, would justify exempting from the insurance code a health care sharing ministry that views health care sharing as "ancillary" to a broader spiritual ministry while justifying regulation of one that does not. That discriminates based on the content of religious beliefs and is "odious" to our constitutional structure. *See Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2255 (2020).

* * *

The Supreme Court repeatedly has made clear that a government policy is not generally applicable when it treats religious conduct differently than secular conduct. In this case, New Mexico is trying to apply against plaintiffs who exercise their religious beliefs through health care sharing ministries an insurance code that is riddled with exceptions for similar secular activities. There is no way

17

for New Mexico to wiggle out of that predicament, at least not without picking and choosing among organizations based on "why" they do what they do, contrary to the Supreme Court's decision in *Tandon*, 593 U.S. at 61.

## II.   New Mexico May Not Question the Soundness of Plaintiffs-Appellants' Religious Beliefs, as Opposed to Their Sincerity.

The First Amendment and numerous federal and state statutes prohibit the government from "prohibiting the free exercise" of religion.   U.S. Const., 1st Am.; N.M. Const., art. XXI, § 1; New Mexico Religious Freedom Restoration Act, NMSA 1978, § 28-22-5 (2000).

"The [Free Exercise] Clause protects not only the right to harbor religious beliefs inwardly and secretly." *Kennedy v. Bremerton Sch. Dist*., 142 S. Ct. 2407, 2421 (2022).   Rather "[i]t does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Id*. (quoting *Smith*, 494 U.S. at 877).

Health care sharing ministries are one example of "those who hold religious beliefs" living "out their faiths in daily life." *See id*.   Specifically, "Health Care Sharing Ministries allow faith-centered people to come together as a community to share each other's medical expenses." *See* Alliance of Health Care Sharing Ministries, Frequently Asked Questions (June 8, 2023), https://ahcsm.org/faq/.   But they also "share more than health expenses," because "they offer spiritual support

18

with prayer over the phone, encouraging notes, and community prayer requests for members." *Id*. There can be no doubt as to the sincerity of plaintiffs-appellants' participation in these ministries.

Faced with the overwhelming evidence of the sincerity of plaintiffs-appellants' religious beliefs, New Mexico in the district court resorted to doing what government has "no business" doing. *Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 724 (2014). New Mexico argued that plaintiffs-appellants' religious beliefs are not supported by "citations to Scriptural or other texts," Appendix 0550 (Defendants' Reply to Plaintiffs' Response to Motion to Dismiss, Dkt. No. 18, at 10 (May 23, 2023)), that is, that they are not correct. In this country, however, "courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim." *Smith*, 494 U.S. at 887. Although the district court did not credit New Mexico's argument, it left open the possibility that it would do so after the motion to dismiss stage, Appendix 0891-92 (Memorandum Opinion and Order Granting in Part Motion to Dismiss and Denying Motion for Preliminary Injunction, Dkt. No. 38, at 6-7 (July 14, 2023), and, in addition, New Mexico may press it again in this Court.

## A. The First Amendment Forbids Questioning the Soundness of Plaintiffs' Religious Beliefs, as Opposed to Their Sincerity.

It is anathema to the First Amendment's religious liberty protections for government to tell religious believers "that their beliefs are flawed." *Hobby Lobby*,

573 U.S. at 724. This principle stems from the recognition that "[p]opular religious views are easy enough to defend" but "[i]t is in protecting unpopular religious beliefs that we prove this country's commitment to serving as a refuge for religious freedom." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1737 (2018) (Alito, J., and Gorsuch, J., concurring).

The Supreme Court repeatedly has applied this principle in rejecting government attempts to question the soundness of religious beliefs across a variety of contexts. *Smith*, 494 U.S. at 887 ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim."); *Hernandez v. Comm'r of Internal Revenue,* 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."); *Jones v. Wolf*, 443 U.S. 595, 602 (1979) ("[T]he [First] Amendment requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization."); *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969) ("First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice."); *United States v. Ballard*, 322 U.S. 78, 86 (1944) ("we do not agree that

20

the truth or verity of respondents' religious doctrines or beliefs should have been submitted to the jury").

In *Thomas v. Review Bd. of Indiana Employment Security Div*., 450 U.S. 707 (1981), for example, the Supreme Court rejected the government's argument that a man's religion did not command his view on which steel factories he could work in without violating his pacifism.  There, a Jehovah's Witness was initially employed in a steel factory that made steel for use, ultimately, in a variety of industrial products, including weapons.  The man was then transferred to a factory that made tank turrets.  He refused to perform those tasks and lost his job.  The state concluded he was not eligible for unemployment insurance, because it was skeptical of the line the man drew between types of steel factories.  The Supreme Court rejected that argument, holding that "it is not for us to say that the line he drew was an unreasonable one." *Id*. at 715.

The Supreme Court's more recent decision in *Hobby Lobby* is similar.  There, store owners believed that their religion did not allow them to provide health insurance that would cover activities and medical procedures that they found objectionable on religious grounds.  573 U.S. at 724.  The government argued that the "connection" between the legal requirement of providing health insurance and the objectionable activities and medical procedures was "too attenuated." *Id.* at 723.

The Supreme Court rejected this argument. The Court observed that the store owners' "belief implicates a difficult and important question of religion and moral philosophy, namely, the circumstances under which it is wrong for a person to perform an act that is innocent in itself but that has the effect of enabling or facilitating the commission of an immoral act by another." *Id.* The government's view, the Court explained, "arrogat[es] the authority to provide a binding national answer to this religious and philosophical question," that is, "in effect [to] tell the plaintiffs that their beliefs are flawed." *Id.* The Court concluded that courts have "repeatedly refused to take such a step" and, indeed, "have no business addressing" such a question. *Id.* at 723-24.

That the government may not question the soundness of religious believers' convictions does not mean that the government cannot question their sincerity. Indeed, courts routinely make such judgments as to credibility. *See Hobby Lobby*, 573 U.S. at 718 (collecting cases and examples). But what government may not do is question whether a religious believer is correct in his understanding of his religion.

**B.    New Mexico Appeared to Be Critiquing the Soundness of Plaintiffs-Appellants' Religious Beliefs.**

Notwithstanding this clear precedent, New Mexico appeared to question repeatedly the soundness of plaintiffs-appellants' religious beliefs. In their complaint, plaintiffs-appellants allege that their health care sharing ministry is "a religious ministry grounded in Biblical teaching and is the method by which

22

religiously like-minded members voluntarily share each other's health care costs." Appendix 0011 (Complaint, Dkt. No. 1, at 2 (Mar. 31, 2023)).

In its briefing on its motion to dismiss, New Mexico did not contest that plaintiffs-appellants do in fact believe that their religion grounds their participation in a health care sharing ministry but rather argued that such a belief is not based on "citations to Scriptural or other texts." Appendix 0550 (Defendants' Reply to Plaintiffs' Response to Motion to Dismiss, Dkt. No. 18, at 10 (May 23, 2023)). As New Mexico put it, plaintiffs-appellants "have not produced any citations to Scriptural or other texts that would specifically require Individual Plaintiffs to be members of a healthcare sharing ministry." *Id.* New Mexico further argued that plaintiffs-appellants "base their case on vague Biblical verses that, essentially, require them to be charitable" and emphasizes that "[m]any other Christians, not to mention atheists and members of non-Christian faiths, manage to live by such a commandment without participating" in a health care sharing ministry. *Id.*; *see* Appendix 0482 (Motion to Dismiss, Dkt. No. 8, at 14 (Apr. 25, 2023)) (plaintiffs do not have standing because they do not allege that they were "specifically required by their religious or other beliefs to be members of healthcare sharing ministries").

New Mexico advanced the same argument through questioning at the preliminary injunction hearing as well. After plaintiffs-appellants elicited pages of testimony regarding their religious beliefs, New Mexico did not question their

sincerity but instead interrogated plaintiffs-appellants as to whether there is "anywhere in the scripture that says something about, along the lines that, thou shall be a member of a healthcare sharing ministry." Appendix 0686 (Preliminary Injunction Hearing Tr. at 133 (June 2, 2023)).

New Mexico's line of argument is simply inconsistent with the law. Just as it was not the government's place in *Thomas* to question whether "the line" that the Jehovah's Witness "drew was an unreasonable one," 450 U.S. at 715, so it is not the government's place here to engage in scriptural disputations. Just as the government had "no business" in *Hobby Lobby* telling the store owners that their religious beliefs "were flawed," 573 U.S. at 723-24, so it is not the government's place here to reject plaintiffs-appellants' beliefs as flawed because they are not recited in scriptural texts.

It is no answer for New Mexico to argue, as they may, that plaintiffs-appellants' religious beliefs do not require the use of a health care sharing ministry, as opposed to some other method of sharing medical expenses. That is either a backdoor way of improperly challenging the sincerity of plaintiffs-appellants' religious beliefs, *i.e.*, New Mexico is effectively and improperly arguing that the plaintiffs-appellants do not really believe that they exercise their religious beliefs by joining a health care sharing ministry, *see supra* Part II.A, or it walks into a separate but equally serious error regarding when the government burdens religion, *i.e.*, New Mexico is effectively and improperly arguing that some forms of organizing

religious exercise are more acceptable than others and that plaintiffs-appellants should choose the more acceptable one. That is not how the law works: if a governmental practice "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists," thereby triggering religious liberty protections. *Thomas*, 450 U.S. at 717-18.

* * *

At the end of the day, New Mexico relied heavily for its defense in this case on the argument that plaintiffs-appellants' religious beliefs are wrong, not grounded in religious texts, or different than the beliefs of other religious believers. That type of argument is forbidden: "[t]he law knows no heresy, and is committed to the support of no dogma, the establishment of no sect." *Watson v. Jones*, 80 U.S. 679, 728 (1871).

## CONCLUSION

For the foregoing reasons, the district court's ruling on whether New Mexico law is of general applicability should be reversed and Defendants' arguments regarding the soundness of plaintiffs' religious beliefs should be rejected.

Respectfully submitted,

/s/ Michael Murray
Michael Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
Tel: (202) 551-1730
Fax: (202) 551-0230
Email: michaelmurray@paulhastings.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(a)(4)(G) and Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) and Fed. R. App. P. 29(a)(5).

1.   This brief is 5,771 words excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

2.   This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type, which complies with Fed. R. App. P. 32(a)(5) and (6).

/s/  Michael Murray
Michael Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
Tel: (202) 551-1730
Fax: (202) 551-0230
Email: michaelmurray@paulhastings.com

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, CrowdStrike Falcon Sensor, version 6.12 and most recently updated on December 12, 2023, and according to the program are free of viruses.

/s/  Michael Murray
Michael Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
Tel: (202) 551-1730
Fax: (202) 551-0230
Email: michaelmurray@paulhastings.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of December 2023, I
electronically filed the foregoing with the Clerk of the Court for the United States
Court of Appeals for the Tenth Circuit using the appellate CM/ECF system.
Counsel for all parties to the case are registered CM/ECF users and will be served
by the appellate CM/ECF system.

/s/  Michael Murray
Michael Murray
 Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
Tel: (202) 551-1730
Fax: (202) 551-0230
Email: michaelmurray@paulhastings.com