No. 23-2123

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

**BREANNA RENTERIA** and **LAURA SMITH,**
*Plaintiffs-Appellants*,

v.

**ALICE KANE,** in her official capacity as
Superintendent of Insurance for the State of New Mexico,
*Defendant-Appellee.*

On Appeal from the United States District Court for the District of New Mexico,
No. 1:23-cv-00276-MLG, The Honorable Matthew L. Garcia

**APPELLEE'S RESPONSE TO PETITION FOR REHEARING EN BANC**

Stephen P. Thies
Office of General Counsel
Office of Superintendent of Insurance
1120 Paseo de Peralta, Fourth Floor
Santa Fe, NM 87501
(505) 470-7366

*Counsel for Defendant-Appellee*

April 14, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ........................................................................................... 1

I.  RESPONSE TO PETITION FOR REHEARING EN BANC ............. 1

II. APPELLANTS FAIL TO CITE CONFLICT WITH A DECISION
    OF THIS CIRCUIT OR THE SUPREME COURT ............................. 2

    A. Neutrality ............................................................................... 2

    B. Generally Applicable ............................................................. 7

    C. Preemption ........................................................................... 11

III. CONCLUSION .................................................................................. 12

CERTIFICATE OF SERVICE ....................................................................... 13

CERTIFICATE OF COMPLIANCE ............................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021),
rev'd, 600 U.S. 570, 143 S. Ct. 2298, 216 L. Ed. 2d 1131 (2023) ..................... 10

*Arnold v. E. Air Lines, Inc.*, 712 F.2d 899, 915 (4th Cir. 1983) ............................ 1

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*,
508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) .................................... 2

*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992) ........................................ 11

*Conway v. United States*, 997 F.3d 1198 (Fed. Cir. 2021) ................................ 12

*Corder v. Lewis Palmer Sch. Dist. No. 38,* 566 F.3d 1219 (10th Cir. 2009) ........ 6

*Does 1-11 v. Bd. of Regents of Univ. of Colorado*,
100 F.4th 1251 (10th Cir. 2024) ............................................................. 2, 3, 4, 5

*Faustin v. City & Cnty. of Denver, Colo.,* 423 F.3d 1192 (10th Cir. 2005) ...... 3, 4

*FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ................................................ 11

*Gobeille v. Liberty Mut. Ins. Co.,* 577 U.S. 312,
136 S. Ct. 936, 194 L. Ed. 2d 20 (2016) ............................................................ 12

*Grace United Methodist Church v. City Of Cheyenne*,
451 F.3d 643 (10th Cir. 2006) .............................................................................. 5

*Harmon v. City of Norman, Oklahoma*, 61 F.4th 779 (10th Cir. 2023)  .. 4, 5, 6, 7

*Hawkins v. City & Cnty. of Denver,* 170 F.3d 1281 (10th Cir. 1999) ................... 4

*Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80,
141 S. Ct. 474, 208 L. Ed. 2d ............................................................................ 11

*St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016 (8th Cir. 2015) ....................... 12

*Tandon v. Newsom*, 593 U.S. 61, 141 S. Ct. 1294,
209 L. Ed. 2d 355 (2021) (per curiam) ............................................................ 7, 9

*United States v. Am.-Foreign S. S. Corp.*, 363 U.S. 685 (1960) ........................... 1

*United States v. Patzer*, 284 F.3d 1043 (9th Cir. 2002) ....................................... 2

**STATUTES**

29 U.S.C.A. § 1003(a)(2) .................................................................................. 10

29 U.S.C.A. § 1144(a) ....................................................................................... 10

42 U.S.C. § 18041(d) .................................................................................. 11, 12

Chapter 59A NMSA 1978 (New Mexico Insurance Code) ................... 7, 8, 9, 10

Chapter 59A, Article 16 NMSA 1978 ................................................................. 9

Chapter 59A, Article 22 NMSA 1978 ................................................................. 8

Chapter 59A, Article 44 NMSA 1978 ................................................................. 8

Chapter 59A, Article 50 NMSA 1978 ................................................................. 8

Employee Retirement Income Security Act of 1974
(ERISA) (Pub. L. 93-406) ........................................................................... 10, 11

Patient Protection and Affordable Care Act (ACA)
Public Law 111–148—MAR. 23, 2010 ....................................................... 11, 12

Section 59A-1-5, NMSA 1978 ........................................................................ 3, 6

Section 59A-1-16, NMSA 1978 ........................................................................ 10

Section 59A-5A-2(F), NMSA 1978 ..................................................................... 9

Section 59A-5A-3(B), NMSA 1978 .................................................................... 9

Section 59A-8-1, NMSA 1978 ............................................................................ 9

Section 59A-16-21.2(A), NMSA 1978 ......................................................... 3, 6, 9

Section 59A-16-21.2(A), NMSA 1978 ........................................................ 3, 6, 9

Section 59A-18-27.1, NMSA 1978 ................................................................9

Section 59A-19-3, NMSA 1978 .....................................................................9

Section 59A-22A-3, NMSA 1978 ..................................................................9

Section 59A-23C-3, NMSA 1978 ..................................................................9

Section 59A-23C-5.1, NMSA 1978 ...............................................................9

Section 59A-24A-3, NMSA 1978 ..................................................................9

Section 59A-34-44, NMSA 1978 ...................................................................9

Section 59A-44-34, NMSA 1978 ...................................................................8

Section 59A-44-41, NMSA 1978 ...................................................................8

**RULES**

Fed. R.App. P. 40(b)(2)(A)-(D) ....................................................................2

Fed. R.App. P. 40(b)(2)(A) ...........................................................................2

Fed. R.App. P. 40(c) .....................................................................................2

**INTRODUCTION**

Appellee, Alice Kane, in her official capacity as Superintendent of Insurance for the State of New Mexico ("Appellee"), respectfully submits the following opposition to petition for rehearing en banc by Appellants, Breanna Renteria and Laura Smith ("Appellants").

I. **RESPONSE TO PETITION FOR REHEARING *EN BANC***

Appellee opposes the Petition for Rehearing *En Banc* filed by Appellants. There is no justification for rehearing en banc as the issues in this matter are not of exceptional importance and there is no error of law for this Court to correct.

It is well established that an en banc rehearing is a procedural outlier to be utilized in only exceptional circumstances rather than a second bite at the proverbial apple for a disgruntled party. En banc courts are the exception, not the rule. They are convened only when extraordinary circumstances exist that call for authoritative consideration and decision by those charged with the administration and development of the law of the circuit. *United States v. Am.-Foreign S. S. Corp.*, 363 U.S. 685, 689 (1960).

Appellants now seek to invoke this onerous process based upon mere displeasure with the majority panel's findings. However, "it is not the intended function of the en banc procedure simply to provide in effect another intermediate appellate court to review for 'mere' panel error." *Arnold v. E. Air Lines, Inc.*, 712

F.2d 899, 915 (4th Cir. 1983). Generally, parties may not assert new issues or arguments on rehearing. *United States v. Patzer*, 284 F.3d 1043. 1045 (9th Cir. 2002).

The Federal Rules of Appellate Procedure ("FRAP") Rule 40(c) specifically cautions that the en banc rehearing process remains categorically disfavored and ordinarily will be allowed only if one of the criteria in Rule 40(b)(2)(A)-(D) is met. Fed. R.App. P. 40(c).

## II. APPELLANTS FAIL TO CITE CONFLICT WITH A DECISION OF THIS CIRCUIT OR THE SUPREME COURT

### A. Neutrality

As discussed above, en banc review may be proper in certain limited situations where "[it] is necessary to secure or maintain uniformity of the court's decisions." Fed. R.App. P. 40(b)(2)(A). However, Appellants fail to show that the majority panel's finding does not conflict with established authority.

Citing *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251 (10th Cir. 2024), Appellants argue that the panel majority erred in its neutrality analysis because Appellee's enforcement actions amounted to "religious gerrymandering.

Use of the term "gerrymandering" in the context of the First Amendment can be found in the cases of *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 521, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993), and in *Does 1-11*, 100 F.4th 1275 (10th Cir. 2024). In *Lukumi*, the Supreme Court found that the design of the ordinance being challenged in that proceedings was drafted in a manner to

2

proscribe religious conduct while excluding secular conduct from its application. *Id*. at 542. The court described those efforts as "religious gerrymander[ing]." *Id*. at 535.

In *Does 1-11*, the term was used in analyzing whether the government's justification for adopting the September 24 Policy was simply a pretext for discrimination. *Does 1-11* at 1275. In both cases, gerrymandering was the means used by government to target religious conduct for different treatment than a similar secular activity.

Appellee's decision in the administrative proceedings was that the entity known as Gospel Light Mennonite Church Medical Aid Plan, dba Liberty Healthshare ("Gospel Light") was engaged in the business of insurance as that term is defined in Section 59A-1-5 of the New Mexico Insurance Code ("NMIC"); and that Gospel Light violated Section 59A-16-21.2(A) of the NMIC by selling an unapproved health benefits plan in New Mexico. The Appellants challenge to that decision in the district court is an "as-applied challenge" in that their challenge is directed at the interpretation and application of these provisions of the NMIC to Gospel Light.

"[A]n as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case." *Faustin v. City & Cnty. of Denver, Colo.,* 423 F.3d 1192, 1196 (10th Cir. 2005). The plaintiffs in an as-applied challenge seek to

vindicate their rights not the rights of others. *Hawkins v. City & Cnty. of Denver,* 170 F.3d 1281, 1286 (10th Cir. 1999).

In contrast, "[a] facial challenge requires more proof than an as-applied challenge. That's because '[f]acial challenges seek to vindicate not only individual plaintiffs' rights but also those of all others who wish to engage in the speech being prohibited.'" *Harmon v. City of Norman, Oklahoma*, 61 F.4th 779, 795 (10th Cir. 2023) (quoting *Faustin*, 423 F.3d at 1196). (citation omitted).

*Does 1-11* involved a facial challenge to the two policies adopted by the University of Colorado's addressing religious exemptions from the University's COVID-19 vaccine mandate for employees and students. The first policy, the September 1 Policy was held to be categorically in violation of the Free Exercise Clause because it "'impose[d] regulations that are hostile to the religious beliefs of affected citizens' or 'act[ed] in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices.'" *Does 1-11* at 1269.

The Court concluded that it was likely that the plaintiffs would "be able to demonstrate that the September 1 Policy's discrimination against certain religions was motivated by animus." The Court found that "[t]he record [was] replete with evidence of stereotypes about and prejudice toward certain religions and religious beliefs for being insufficiently "organized," insufficiently "official," or insufficiently "comprehensive" in the eyes of the Administration. The Administration "gave every

4

appearance of adjudicating [the Does'] religious objection[s] based on a negative normative 'evaluation of the particular justification' for [their] objection[s] and the religious grounds for [them]." *Does 1-11* at 1270. With respect to the second policy, the September 24 Policy, was likely "motivated by the same religious animus present in the September 1 Policy," not neutral motivations. *Id*. at 1275.

The majority panel's decision does not conflict with *Does 1-11* and is consistent with the Tenth Circuit's holding in *Harmon*, 61 F.4th at 795. *Does 1-11* involved a facial challenge. *Harmon* involved an as-applied challenge. When concluding the appropriate standard applicable to an as-applied challenge, the Tenth Circuit stated that "[w]hile the First Amendment provides absolute protection to religious thoughts and beliefs, the free exercise clause does not prohibit Congress and local governments from validly regulating religious conduct." *Harmon,* 61 F.4th at 794 (quoting *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006). "The inquiry turns on which level of constitutional scrutiny applies to government regulations that burden religious conduct. We apply rational-basis deference if a regulation is both neutral and generally applicable, even if that regulation incidentally burdens religious exercise." *Id*. A law is neutral "so long as its object is something other than the infringement or restriction of religious practices." *Harmon*, 61 F.4th at 793 (10th Cir. 2023); *Corder v. Lewis Palmer Sch. Dist. No. 38,* 566 F.3d 1219, 1232-33 (10th Cir. 2009).

The Appellee's decision in the administrative proceedings was that Gospel Light was engaged in the business of insurance as that term is defined in Section 59A-1-5[1] of the NMIC; and Gospel Light violated Section 59A-16-21.2(A)[2] of the NMIC by selling an unapproved health benefits plan in New Mexico. Neither statutory provision has the infringement or restriction of religious practices as its

---

1 Section 59A-1-5, NMSA 1978.
"Insurance" is a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils, or to pay or grant a specified amount or determinable benefit in connection with ascertainable risk contingencies, or to act as surety.

2 Section 59A-16-21.2, NMSA 1978. Health benefits plans; prohibition; unlicensed health benefits plans; unapproved health benefits plans.
    A. No person or entity shall sell or issue, or cause to be sold or issued, a health benefits plan that is unlicensed or unapproved for sale or delivery in the state.
    B. No person or entity shall sell or issue, or cause to be sold or issued, health insurance coverage that is not permitted health insurance coverage.
    C. As used in this section:
        (1) "health benefits plan" means a policy or agreement entered into, offered or issued by a health insurance carrier to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services; and
        (2) "health insurance carrier" means an entity subject to the insurance laws and regulations of this state, including a health insurance company, a health maintenance organization, a hospital and health services corporation, a provider service network, a nonprofit health care plan or any other entity that contracts or offers to contract, or enters into agreements to provide, deliver, arrange for, pay for or reimburse any costs of health care services, or that provides, offers or administers health benefits plans or managed health care plans in this state.

object. The majority panel use of *Harmon's* rational-basis review was therefore not in error.

B. **Generally Applicable**.

With respect to the concept of generally applicable, Appellants argue the majority "fashioned an exception to the holding in *Tandon v. Newsom*, 593 U.S. 61, 141 S. Ct. 1294, 209 L. Ed. 2d 355 (2021) (per curiam), that "finds no support in the law." *Tandon* held that a determination whether a government regulation is generally applicable involves a comparison of whether two activities are comparable. *Id*. at 62.

The Tenth Circuit cited *Tandon* in *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1184 (10th Cir. 2021), rev'd, 600 U.S. 570, 143 S. Ct. 2298, 216 L. Ed. 2d 1131 (2023). In *303 Creative*, the Court stated "[w]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *303 Creative* at 1185.

Elsewhere in their Petition Appellants list ten types of activities: fraternal benefit societies, nonprofit health care plans, health maintenance organizations, prepaid dental plans, motor clubs, bail bondsmen, insurance premium finance companies, title insurers and title insurance agents, certain labor organizations, credit union share insurance, and risk management divisions, that Appellants consider to be comparable activities with the program operated by Gospel Light. To

categorically claim that these activities are similar is to overly simplify the regulatory scheme set forth in the NMIC.

A health policy subject to Chapter 59A, Article 22 of the NMIC poses different risks than a motor club subject to Chapter 59A, Article 50 of the NMIC. These activities are not comparable thus justifying the difference between the scope and extent of their regulation.

Appellees repeatedly compare the program operated by Gospel Light to fraternal organizations claiming those entities are subject to minimal regulatory oversight despite being able to offer health insurance to its members. A cursory review of the NMIC could result in the erroneous conclusion that fraternal organizations are exempt from the NMIC. A closer review reveals that they are not.

Fraternal benefit societies are regulated in party by Article 44 of the NMIC. Section 59A-44-41 of Article 44 expressly lists eleven provisions of the NMIC that apply to fraternal benefit societies. Section 59A-44-34 expressly subjects a society to Chapter 59A, Article 16 NMSA 1978.[3] Section 59A-16-21.2(A) is contained within Article 16, which is the statutory provision that Gospel Light was found to be violating. Consequently, if a fraternal benefit society would offer a health benefits

---

[3] Section 59A-16-1 expressly provides that fraternal benefit societies are subject to the provisions of Article 16.

plan it could do so only after obtaining approval of the plan by the Office of Superintendent of Insurance.

Moreover, a review of the NMIC reveals that numerous statutory provisions located throughout the NMIC expressly subject a fraternal benefit society to its application. For example, a fraternal benefit society offering an insurance product is subject to the same financial requirements imposed on other entities that are engaging in the business of insurance. *See* Sections 59A-8-1; 59A-5A-2(F) & (G); 59A-5A-3(B); and 59A-34-44. A fraternal benefit society that is engaging in the business of insurance is subject to some contract and form requirements imposed on other providers. *See* Sections 59A-18-27.1; & 59A-19-3. Depending on the type of health program it offers, a fraternal benefit society is subject to the same regulations imposed on other providers of health program. *See* Sections 59A-23C-5.1; 59A-24A-3; 59A-22A-3; and 59A-23C-3. Contrary to Appellants' claim, the majority panels' decision does not conflict with *Tandon*.

Appellants further advance the argument that the exemption granted to both fraternal benefit society and labor organizations in the NMIC undermines the Appellee's interest in protecting consumers through insurance regulation. As discussed above, a fraternal benefit society is subject to the same regulations imposed on other providers of a health program.

As for labor organizations, section 59A-1-16 of the NMIC exempts "a labor organization that, as an incidental part of its overall operations, issues benefit certificates to members or maintains funds to assist members and their families in times of illness, injury or need, and is not for profit." This particular exemption is an acknowledgement that the Employee Retirement Income Security Act of 1974 (ERISA) federalizes the law of employee benefits. In addition to establishing a comprehensive regulatory framework for employee pension benefit plans, ERISA also preempts most state laws relating to "employee welfare benefit plans," a broad category that includes nearly all employer-sponsored and union-sponsored health plans.

The express statement of the ERISA pre-exemption is found in 29 U.S.C.A. § 1144(a), which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section [29 U.S.C.A. § 1003(a)(2)] of this title[.]" However, there are limits to the ERISA preemption. To the extent that an ERISA plan pays directly out of plan assets (a "self-funded plan"), it is exempt from state regulation. To the extent that the plan purchases insurance to cover some or all of its benefit obligations (an "insured plan"), a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts.[4] And finally, the recent Supreme Court decision of

---

[4] *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990).

*Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 141 S. Ct. 474, 208 L. Ed. 2d 327 (2020), potentially dramatically narrows the scope of ERIA preemption as it applies to labor unions and other ERISA exempted insurance activities.

The majority panel did not error nor was its decision in conflict with a decision of the United States Supreme Court or this Circuit in concluding that rational basis review applied.

### C. Preemption

Appellants also advance the argument that the majority panel erred in concluding federal law does not preempt Appellee's attempt to regulate health care sharing ministries. Citing *Cipollone v. Liggett Grp., Inc.,* 505 U.S. 504, 516, 516 (1992), Appellants advance the argument that "Congress' intent to preempt is the critical issue."

In support of its argument, Appellants erroneously cite 42 U.S.C. § 18041(d) for the proposition that "Congress preempted state law that 'prevent[s] application of the provisions of [the ACA].'" Appellants misconstrue that particular provision. Section 18041(d) has been characterized by the Supreme Court as an "anti-preemption provision." *Gobeille v. Liberty Mut. Ins. Co.,* 577 U.S. 312, 326, 136 S. Ct. 936, 194 L. Ed. 2d 20 (2016). The United States Court of Appeals, Federal Circuit held that Section 18041(d) "expresses [the] congressional intent to preempt only a narrow class of state laws." *Conway v. United States*, 997 F.3d 1198, 1209

(Fed. Cir. 2021). The Eighth Circuit concluded that the "clause is a narrow one, and only those state laws that "hinder or impede" the implementation of the ACA run afoul of the Supremacy Clause." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1022 (8th Cir. 2015). As noted by the *Conway* court, "there is a 'historic primacy of state regulation of matters of health and safety,' which supports applying the presumption to health insurance regulations." *Conway,* 997 F.3d 1198 (citation omitted). The majority decision does not conflict with Section 18041(d).

Appellants advance several reasons why they believe the majority panel's preemption conclusion was in error. However, Appellants focuses upon the ways it disagrees with the majority panel's opinion, which is not a basis for rehearing.

### III.   CONCLUSION

Accordingly, for each of the reasons discussed above, en banc review, and the burdens, efforts, and delays necessitated by such a review, are neither appropriate nor necessary in this matter.

> Respectfully submitted,
> N.M. OFFICE OF THE
> SUPERINTENDENT OF
> INSURANCE
>
> By: /s/ *Stephen P. Thies*
> Stephen P. Thies
> OSI Office of General Counsel
> 1120 Paseo de Peralta, Fourth Floor
> Santa Fe, NM 87501
> (505) 470-7366
> stephen.thies@osi.nm.gov

# CERTIFICATE OF SERVICE

I certify that the foregoing brief was filed through the CM/ECF electronic filing system, which caused a copy of the brief to be served automatically on all counsel of record this 14th day of April, 2025.

N.M. OFFICE OF THE SUPERINTENDENT OF INSURANCE

By: /s/ *Stephen P. Thies*
Stephen P. Thies

# CERTIFICATE OF COMPLIANCE

1.   This document complies with the type-volume limit of Fed. R. App. P. Rule 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b), this document contains 2,918 words.

2.   This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this documents has been prepared in a proportionally spaced typeface using **Microsoft® Word for Microsoft 365 MSO (Version 2312)** in 14 point Times New Roman.

N.M. OFFICE OF THE SUPERINTENDENT OF INSURANCE

By: /s/ *Stephen P. Thies*
Stephen P. Thies